was rendered and we have appealed. We've argued numerous issues in the brief, but for the purposes of argument today I would like to focus on two issues. And the first is that the trial court erred legally and factually in finding Church Mutual in bad faith in handling of this claim and failing to pay the claim and insurance proceeds. Under revised statute 22, 1892. Second, we'd like to address the legal errors in the court's calculation of penalties and attorney's fees. To the extent we have time, we'll go into the other issues. Other than that, we'll stick with the arguments in the brief. Your Honors have read the briefs and you're familiar with the case, but I just have to put it in perspective in a one-minute overview of this claim. The hurricanes passed. Hurricanes Laura and Delta passed over to and damaged the church at issue. They made a claim against Church Mutual. Church Mutual sent Inspector Tony Bunn to inspect the church. There was a prior tornado claim which was still in litigation at the time. It was a live issue of pre-existing damages. Mr. Bunn inspected, recommended an engineer be retained. The engineer was retained. Mr. Bunn does a payment at $166,000 to be paid immediately and the rest to be paid upon the completion of construction. Within 30 days of that recommendation, payment was made. Second payment was made upon Bunn's confirmation that the damages were repaired. And a final payment was made. The total amount paid was $191,832. With both payments, a letter was sent out telling the church, if you cannot make the repairs for this claim, let us know. No response from the church whatsoever until some nine months later when a suit is filed. This case progresses through trial. Three months before trial, in May of 2003, three years after the storm, the church presents its proof of loss. Three months before trial, $1.7 million in damages. Way above what Church Mutual's inspector had seen. No other competing estimates or anything given during that time. What does Church Mutual do? We're three months out from trial. First of all, it sends out an inspector to validate that. It realizes that multiple claims are either non-covered or in excess of the damages that their own experts are calculating. So it challenges the ruling at trial. Church Mutual successfully has that estimate reduced for $374,000 at trial. Many more were argued, but this is what the trial court did. Rarely will you see a record where the trial court says the insurance company is doing a good job of disputing an estimate and is actually prevailing on certain things. Counselor, you're doing an excellent job. This is what you're supposed to be doing. I don't agree with all of it, but I agree with you here. There's pre-existing losses here. There's non-covered losses here. There's excessive losses here. And that's all in the brief, and I can go through that. But what we have here is a judgment rendered after trial where the trial court agrees that Church Mutual had a right to litigate, successfully litigated, and is still cast in bad faith. And not only on the undisputed amount at trial, but on $1.1 million. This is a gross abuse of Louisiana R.S. 22-1892. We have an issue of the first inspection and the payment and whether that's timely. Our position is payment was made within 30 days of the finalization of the estimate of Tony Bunn, the $191,000 payment. This is supported by plaintiff's own evidence, exhibits one and two, the claims files. It shows that Bunn went out, inspected, says we need an engineer to look at this. It's a mass commercial claim. There are multiple buildings, multiple metal roofs. I need an engineer to look at this. He submits what he says are his, quote, estimates of the loss. But Lynn Renlund for Church Mutual testifies in our case that these are just that. They are estimates. Until Church Mutual has a definitive and clear satisfactory estimate in its hands which it can pay, all of that is preliminary. What's this? I mean, I know the other side can test that. Yes, yes. First payment was late. Let's assume the first payment was late. As I understand Louisiana law, that doesn't mean that you're in bad faith. Merely because it's late, there has to be an additional showing of what the statute says. Judge Duncombe, we agree with that entirely. Right. If you would speak to that, why do you think the district court was wrong in making that additional finding of bad faith beyond the lateness of the first payment? Okay. First of all, I'll say if we are late on the first payment, then penalties under 1893 can only attach to that payment which is $191,000 and can be no more than . . . I guess that's a distinct issue. Yes. Right. Fifty percent of those. The other proof of laws, as I said, only comes three months before trial and it's $1.7 million. We have a right to dispute that. This is a strictly applied statute in Louisiana, a penal provision. There are three elements under the claim, as you say. An undisputed proof of laws, highly disputed here. Failure to tender in thirty days and most importantly, third, that there has to be arbitrary and capricious behavior. That's what I wanted you to focus on. That's what I would love to talk about. There has to be arbitrary and capricious behavior. There are a number of cases in Louisiana which say when there is a reasonable, legitimate question as to the extent and causation of a claim, bad faith should not be inferred. In these instances, when there is substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insurer's loss, failure to pay within the statutory time period is not arbitrary, capricious, or without probable cause. That's from Louisiana Supreme Court in the Louisiana bag case, citing to Reed and others. This is a longstanding principle of Louisiana law. There is no arbitrary and capricious behavior if there's a legitimate fact and dispute. And here the record in the judgment itself establishes that there is a reasonable dispute, which was actually resolved in favor of Church Mutual on many instances. The church dropped claims for two buildings during trial. That's $25,000. Church Mutual successfully argued that they had included cosmetic damages to entire brickwork around the building. That's $320,000 right there. Inflated the estimate for scaffolding by 90%, saying it would take some 10 years of work. That was a mistake, but it was through our advocacy at trial saying this is excessive. That number was reduced. That's another $56,000. They included asphalt for $10,000. This totals some $374,000, which was resolved in us. What happens in such instances? We've cited the cases. The finding of bad faith is reversed. I'll refer you to Reed, Hedrick, Darby, Jones, and in this court, Burke Cohen versus Landmark and the cases cited therein. I think it's legally erroneous, which mandates the de novo standard of review. I think it's a mixed question of law and fact, given the record and the trial court's finding that we successfully litigated, which expands the scope of review. At a very minimum, it is clear error. It is not supported by the record, and we hope the trial court does not. The second issue I'd like to briefly address is error in assessing penalties on the total loss if we are in bad faith. I'm sorry, is the five minutes going into my rebuttal? No, that's separate. Great. Thank you. What happened here is the trial court determined that there were untold paid losses of $1.4 million. It reduced Mr. Sonnier's estimate for the errors I previously noted in some $374,000. It found net unpaid losses of $1,100,000, $1.1 million. The court applied 22-1892 to award 50% penalties on this $1.1 million figure. First of all, we're arguing that there is no bad faith, and so penalties shouldn't apply at all. But if we're wrong, and if there was bad faith, it can apply to that. When you look at the bad faith statute, 1982, it's framed in terms of a failure to pay an undisputed amount. That goes through Louisiana bag and even the cases that we say don't apply, like McDill and everything. It all goes about the failure to pay an undisputed loss. Well, undisputed amount at trial, and it's important to realize that this case was in trial and submitted to the court for resolution. Church Mutual's actual readjustment of Mr. Sonnier and Mr. Wright's appraisal was going on during trial, and they got a report some three days before saying that, yes, we do owe an additional, I think it was $208,000. So when you look at what's truly undisputed at the trial, it's that $208,000, and it's the Millikan invoices, the actual invoices that the church paid, which are $178,266. Incidentally, these are invoices that was never provided to Church Mutual in its initial adjustment, which the pastor admitted during his testimony. When you add these two figures together, you come up with $387,000 in maximum undisputed amount at trial. So with all due respect, if we are in bad faith and we entirely disagree with that, the maximum penalty that can be assessed is 50% of $387,000. This error affects the judgment in toto. It affects the amount of the penalties awarded. It affects the attorney's fees, which were based on one third of the total of $1.4 million. It affects the interest that continues to accrue on this. So it is a prejudicial and massive error, legal error in this case. We ask you to verse that ruling. And alternatively, we have argued that at the very minimum, if we are in bad faith, then we need to get a credit for the amounts that were paid, which must be reduced from the amount the penalty is calculated on. That is, of course, dependent upon this circuit, court's case law in French and Greletto, which hold that if the entire amount is undisputed and failure to pay is within 30 days, the court can award the total amounts. But here we are arguing that the first proof of loss came during trial and was highly disputed. And so, at a very minimum, what we paid should be reduced. There are various other issues that I hope to touch on in my rebuttal. If you have any questions other than that. Just a real quick one, which the other side may go into in their time. I don't know. Right. As to the pricing report, Kermit, Sonia, Sonia, Kermit Sonia, Kermit Sonia. He's not from Louisiana. I did well on Bourgeois, I thought. You did excellent. Thank you, Judge Willard. His report for pricing, am I wrong that Church Mutual did not object on the basis of what pricing he was going to use at trial? And maybe you want to talk about that on record? I'll spend a minute on that while we're on it and while it's hot. Church Mutual filed a pre-trial motion on this, a motion in lemonade seeking to apply pricing as applied in the policy at the time of the loss, which would mean back in August of 2020, not in May of 2023, Mr. Sonia's report. We filed a motion in lemonade that it was not taken well by the court who said, this is a bench trial. I can decide these issues at trial. When we objected to Mr. Sonia's testimony. At trial? At trial. You are correct, Judge Willard, that I didn't find a precise objection, but I think this is something that's very well known in this litigation and the court in ruling and allowing Mr. Sonia to testify even says the pricing issues, I'll decide all of that as we go along. But the most important thing that's interesting to me is this can be changed at any time. The court allowed Mr. Sonia to change his estimate pricing during trial. This is Plaintiff's Exhibit 58 when Mr. Sonia made all these reductions for things that he had miscalculated or erroneously included, but then he tried to apply pricing in August of 23 when the trial was going on and the judge said, no, no, no, no, no. Your estimate was in May of 23, so you need to revise that. Okay. We'll hear you back. It's a live issue. Right. We'll hear you back in a few minutes on rebuttal. Mr. Henschein, you're up. May it please the court and counsel. So I'm going to address the first two issues that were raised. I'm glad that these two are at the forefront because I think they're extremely important and they're well settled. This is well settled law with all due respect to counsel that's completely misinterpreted. The Louisiana bag case says, and I'm going to read the quote from Louisiana bag because what's important, let me back up a little bit, and I'm going to explain why they're in bad faith as a matter of law. The reason they're in bad faith as a matter of law is because their own corporate representative admitted at trial that there was a failure to pay an undisputed amount. Well, I read that testimony and it sounds like an admission that a payment was late. I'm sorry, I didn't hear. It sounds like an admission that the payment was late. She said also, Your Honor, if you keep going and reading her testimony, you admit that that payment was made in violation of Louisiana law. Yes. Well, I mean, are you saying that testimony in and of itself establishes bad faith with respect to the statute? I believe it does, Your Honor, because it's a judicial admission, but let me tell you why else. Because if you look at inside the body of the brief that was filed by my client, First United Pentecostal Church, if you read in there, there is the excerpt of the actual recommendation for payment by Tony Bunn to Church Mutual. In that recommendation, these are not my words, these are Mr. Bunn's words. He said, it is our recommendation that the $166,000, I'm rounding off, and that a recommendation for an undisputed payment be made. Now, I think the judicial admission by, confession by the corporate representative for Church Mutual, by the way, it's important that Ms. Roman was a corporate representative in her testimony with buying Church Mutual. She says we violated Louisiana law. Well, I mean, let's assume that's true, and so wouldn't that therefore mean, all right, well, then you're in bad faith as to $166,000. So 50% of that plus attorney's fees? That's not the way it works, Your Honor, and I'll explain that if I can. So I'm going to read two things to you I think are very important. Number one is let's start with the bad faith, and then I'm going to get to the second thing goes hand in hand with it. Because if there is an undisputed payment that was not made at the beginning, the case law says that there's a penalty due on the entire amount found to be owed without any deduction for prior payments. That's this circuit, the French versus Allstate case, and also the Grilletta versus Lexington Insurance Company case. So I'm going to read to you from both of those if it's okay, and I'm happy to answer your other questions. Well, I mean, the entire amount, what does that mean? The entire amount that is then disputed at trial and then the district judge reduced . . . And the entire amount found to be due on the claim, and let me tell you what happened in the Grilletta case, okay? In the Grilletta case, this court was reviewing a decision by a district court on a hurricane case, Hurricane Katrina, okay? In that case, the district court found that the first payment was undisputed and was made untimely in violation of Louisiana law. However, the court said that the remaining amounts that were found to be due were disputed in good faith, and therefore, there should not be penalties and attorney's fees owed on that. This court reversed, and this court said that based on the Louisiana bad case, Louisiana Supreme Court, that it was error and that penalties had to be awarded not just on the amount that was initially late, but on the entire amount, and that's Louisiana Supreme Court jurisprudence that it had to follow. So that's what the court did. Not only did it find it was an error, it found it was a reversible error, and so that's the French v. Allstate case. But if you go to the Louisiana bad case, I think this is really important, and this is straight out of the case, Your Honor. It says, there can be no good reason for an insurance company to withhold an undisputed amount. Any insurer who fails to pay an undisputed amount has acted in a manner that is by definition arbitrary, capricious, or without probable cause. So at a minimum, I'm sorry. That means a late payment of an undisputed amount is by definition bad faith? Yes, Your Honor. Okay. That's straight from Louisiana Supreme Court, Your Honor. And that's what, I mean, I just read a direct quote from the case. So there can be no good excuse. If you don't pay it on time, there is no excuse for it. Period. End of story. But I'll read to you what the French case said as well. This is a quote from the case. The failure to pay an undisputed amount within the statutory delay subjects the insurer to penalties on the entire claim without any deduction for amounts paid. So now, the court may feel that's a harsh rule because there were some things that were disputed at trial. There were a lot of things that were not disputed. It wasn't just that first payment, Your Honor. I'm going to give you another example of what wasn't disputed. The defense's own experts, three months before trial, issued a report to Church Mutual saying there was over $260,000 owed for interior damages to the main sanctuary of the church, which has never been paid. That's their own expert. That's an undisputed amount in my view, Your Honor. They've never disputed that amount. They owe that amount. They have not paid that to date, Your Honor. They haven't paid the judgment. They haven't done anything. And Your Honor, I don't mean to get in my soapbox about this, but the purpose of these bad faith statutes is to promptly get money in the hands of the insurers so that the insurers can rebuild their lives, rebuild their churches, rebuild their communities. And there's a good societal reason for that because if they don't, just like in Lake Charles, where I live, and De Quincey, which is where this happened, is a community close by, we've lost 10% of our population because there have been thousands of lawsuits filed on this insurance stuff. And so, here we are now, almost four years later, and we're still fighting about stuff that's a well-settled law, Your Honor. I mean, again, this is law that this circuit and the Louisiana Supreme Court has made crystal clear. If you don't pay an undisputed amount, you're in bad faith as a matter of law. And Your Honor, you were asking if whether or not that was as a matter of law that they were in bad faith because of the corporate rep. Well, it's certainly a factual determination that the trial court could make. The trial court heard evidence, heard the corporate rep, saw the note from the claims adjuster, saw that Church Mutual didn't pay even what its own Certainly, there was ample evidence to find bad faith in this case. Ample evidence. So, I mean, I think that there's no basis in law or fact, in my view, Your Honor, to overturn this decision. Now, with respect to your question, Judge Willett, I want to get to the pricing. There was no objection made at trial to the pricing, period. And the case law is crystal clear that even if a motion in limine has been filed under the Fedoria case, if I pronounce that right, versus Harris, and under the Wilson versus Wegner case, under both of those cases, even if there's been a pretrial motion in limine filed, that objection still has to be re-urged at trial before the evidence is introduced. That was not done here, Your Honor. And not only that, there has been no evidence at all that there was anything wrong with the pricing used in Kermit Saunier's report. They're trying to argue that improper pricing was not used when they didn't submit any evidence from anyone that the pricing was improper. By relying on Saunier's report, was the district court making any sort of implicit legal determination about what pricing ought to be used under the policy? Your Honor, I can't say what the court's intent was with respect to pricing. What I can say, though, is that this court in the Sugartown case, for example, I believe Judge Duncombe was on that case, Sugartown versus Pentecostal Church. In that case, it's clear the court said that's a factual determination to be made by the court, and the court will review the evidence to determine what the proper pricing should or should not have been. But the fact of the matter is, Your Honor, the evidence was submitted without objection. We put the report in. Not only did they not object and say we had a prior motion in limine, they said they did not object. We said we're introducing the report. They did not object at all. So there was no reason for the court to think there was any issue with respect to the pricing, Your Honor, nor was there any testimony from any witness by Church Mutual that the pricing was improper, that it would have made a difference if there had been any adjustments in the pricing. There's none of that sort of testimony, Your Honor. So I hope I've answered your question sufficiently. Judge Duncombe, have I answered your questions? It's been yes. Okay, just making sure. So I'm happy to answer any other questions. One other thing I would say is that there have been a number of things said in this case, and I've heard it said in brief in this case, and there's a saying I've heard, I'm not sure who to attribute it to, but it says, the problem with absolutes is that they're almost always impossible to prove. And in this case . . . That statement you just said is an absolute, so I'm not sure I understand. Almost always impossible. So, you know, what they've said in their brief, Church Mutual, is that First United never showed any undisputed amount. We've talked about that. This is a case in 2019. First United failed to present any satisfactory written proof of loss, and indeed, no satisfactory proof of loss at all, even though we've submitted estimates, photographs, receipts, I mean, et cetera. They've also said on page 49, finally, there is no plaintiff witness who testified that Church Mutual mishandled the claim or that its conduct was arbitrary, capricious, or without probable cause. And it's ignoring its own witness's testimony in which the corporate representative said, we didn't pay on time, and it was in violation of Louisiana law. So, you know, I could go on and on, Your Honor. I think I've answered your questions, but I think that the record is . . . clearly refutes the allegations made by Church Mutual here, and we'd ask that the judge would be affirmed. Mr. Hanson, thank you. Thank you very much. Mr. Bourgeois, you can wrap us up today with five minutes. Absolutely. Your Honors, I have a lot of respect for my opposing counsel. I don't mean to disparage him in any way, and I certainly don't think I've fabricated anything in this case. We just have a lot of disagreement. And the first one is the first one he mentioned, Rendlin's testimony. Rendlin can't testify as to whether this is legally bad faith or not, or whether they violated a statute. What she did testify to during opening is she did say it was late. That was in response to a question. That is in the record. But we called her on direct, and she clarified. And I just don't see how the Court can reconcile that when you look at the totality of her testimony and the plaintiff's own evidence, which is our claims log, clearly shows that an inspection is pending by the engineer, and then in the final report of Mr. Bunn, the actual exactament is attached. That's what they're looking for. And they say, okay, this is it. We're paying it. With respect to Louisiana BAG and their proclamation that de facto bad faith, that's just, I don't think that's Louisiana law at all. When you read the statute, it says, and when such payments are arbitrary and capricious. So it's the statute itself. Louisiana BAG is in a definitive holding because they agreed in that case that a proof of loss was made at a certain point. So proof of loss was never really an issue there. It's just an exegesis of law, which we think is dicta. I think it's unfortunate because people keep saying it over and over again. But I don't think it's borne out by other Louisiana Supreme Court cases that say this is a fact-intensive issue, and you have to prove arbitrary and capricious behavior. Not only an undisputed loss, late payment, but vexatious behavior, intentional type behavior. With respect to Mr. Bunn and that we missed stuff, I need to comment on that. Church Mutual retained an expert to go out and tell it how much it owed. We cited to two cases, Price and Butler, that says an insurance company, this is the normal course of events. An insurance company should not be cast as unreasonable or arbitrary or anything. And relying on the expert, generally, you know, if there's other stuff coming in, we'll do that. But what happened here? So it sends out Bunn. Bunn makes an assessment. Church Mutual is talking with Bunn, getting him to finalize his estimate. It's getting nothing from the church. No competing estimates. There's nothing. So it's depending upon this expert who tells it how much it owes. Bunn is actually telling them, oh, the church agrees with this. They've hired a contractor. It can get it done for this amount. They're finished. Here's their certificate of completion payout. So that's what happened. So you can't go back with an estimate for $1.7 million produced three months before trial saying, gotcha, you only saw $191,000. So you're in bad faith for the entire $1.7 million. That's just unfair. That cannot be an application of the bad faith statute. And I think it's just factually and legally erroneous. There's no contrary evidence from the church that the judgment at issue relies on other than this estimate that comes in three months before trial. So it's unfair to say, we got you. And that sets up a bad precedent for insurance companies and the law. If the minute an insurance company walks in and an insurer does nothing and just sits back and doesn't do anything, no proof of loss or anything, and at the end of the day they get a judgment through an estimate that's created years later that's much higher, it's automatic bad faith. And I think we recited the Reed decision in the case which says, an insured who does not provide some kind of information to the insurance company to assist it in its determination of losses can hardly claim that the insurer's conduct is arbitrary and capricious. There's a lot of other things. The objection issue, the Fotiori case and everything, these are jury trials with contemporaneous objections. This is a judge trial. The judge is aware of this. It's not our burden to prove any of this. When they gave an estimate with the wrong pricing, it was a legal issue. And it was clearly resolved by that own estimate when the court said, hey, change your pricing. So just to clarify, clarify, clarify, the objection that you say you made to the pricing report was in the motion for limine, opposing counsel says it wasn't made at trial. It was made in the motion. I think that's fair. I think it's also fair to say that the trial court knew of it. And even in the face, in the failure to object, you have the clear error standard. And that would apply to this blatant legal error that applies in this case. Okay. Thank you very much. Thank you for your time. The case is submitted. We appreciate both counsel for today. We're going to stand in recess until tomorrow afternoon at 1 p.m. So y'all can exit. No need to wait for us. We've got to get situated up here. Thank you. Thank you, Your Honor.